[Nos. F039797, F040179. Fifth Dist. Apr. 28, 2006.]

JONATHAN NEIL & ASSOCIATES, INC., Plaintiff and Appellant, v.
FREDDIE JONES, Defendant, Cross-complainant and Respondent;
MILDRED JONES et al., Cross-complainants and Respondents;
CAL-EAGLE INSURANCE COMPANY, Cross-defendant and Appellant.

## COUNSEL

Parichan, Renberg, Crossman & Harvey, Richard C. Crossman; Greines, Martin, Stein & Richland, Irving H. Greines, Robin Meadow and Peter O. Israel for Plaintiff and Appellant and for Cross-defendant and Appellant.

McCormick, Barstow, Sheppard Wayte & Carruth, James P. Wagoner and David W. Burnett for Defendant, Cross-complainant and Respondent and for Cross-complainants and Respondents.

## OPINION

**VARTABEDIAN, Acting P. J.**—This case concerns consolidated appeals from the entry of a renewal of judgment (Code Civ. Proc., § 683.130) and an order denying appellant's motion to vacate the renewal (Code Civ. Proc., § 683.170). (All further section references are to this code.) We conclude the renewal of judgment is not an appealable order, but the order denying the motion to vacate is appealable as an order after judgment. (See § 904.1, subd. (a)(2).) Next, we determine the trial court did not err in failing to vacate the renewal of judgment. We do not reach the question whether the court erred in declining to amend the renewal of judgment (see § 683.170, subd. (c)), however, since we conclude the renewal of judgment has no separate existence from the underlying judgment. Accordingly, the renewal of judgment was vacated by operation of law upon issuance of the remittitur in the appeal reversing the underlying judgment. The present appeal, as a result, is moot.

### Facts and Procedural History

A longer account of the facts and history of this case is contained in the Supreme Court opinion in *Jonathan Neil & Associates, Inc. v. Jones* (2004) 33

Cal.4th 917, 923–930 [16 Cal.Rptr.3d 849, 94 P.3d 1055]. For the purpose of the present appeal, a shorter version will suffice.

Respondent Freddie Jones obtained insurance from appellant Cal-Eagle Insurance Company (Cal-Eagle) through the state's commercial assigned-risk insurance program. Respondent owned a trucking company and, after expiration of the policy, Cal-Eagle performed an audit of respondent's records for the purpose of adjusting the premium, as permitted by the policy. A dispute arose when Cal-Eagle asserted the right, at first, to $111,523 in additional premiums; it later lowered its demand to $51,294. When respondent refused to pay the premium, Cal-Eagle assigned its claim to appellant Jonathan Neil & Associates, Inc., a collection agency (Neil).

Neil sued respondent for the adjusted premium. Respondent (together with his wife and associated business entities, to whom we will collectively refer as respondent) filed a cross-claim against Cal-Eagle and respondent's insurance broker, Johnsey Insurance Company (Johnsey). Trial resulted in a 1997 jury verdict that respondent owed Neil no additional premium, that Cal-Eagle had engaged in bad faith breach of the contract and fraud toward respondent, and that Johnsey was not negligent in its handling of respondent's insurance application. The jury awarded respondent compensatory damages from Cal-Eagle in the amount of $2,027,167 and punitive damages in the amount of $11,445,714.23; judgment was entered on the verdict. In posttrial proceedings the trial court conditioned its denial of Cal-Eagle's new trial motion on remittitur of the punitive damages award to $4,350,887. Respondent agreed to the remittitur, reserving its right to appeal from that order. Cal-Eagle's request for entry of a modified judgment, reflecting the remittitur, was denied, apparently on the basis that the remittitur functioned simply as a credit against or partial payment of the original judgment.

Cal-Eagle appealed from the judgment in 1997. Respondent cross-appealed from the remittitur order and from the judgment in favor of Johnsey. Briefing and preparation of the record were delayed. We reversed the judgment against Cal-Eagle in 2002 on the basis that the alleged bad faith breach of the insurance contract was not actionable as a tort and could not support an award of punitive damages. (*Jonathan Neil & Associates, Inc. v. Jones* (May 14, 2002, Nos. F029400 & F030300) [hereafter referred to as F029400] rev. granted Aug. 20, 2002.) We also held that respondent's entire claim against Cal-Eagle was precluded until and unless respondent exhausted his administrative remedies to challenge Cal-Eagle's assertion of the right to additional premiums. We remanded the case, directing the trial court to stay further proceedings "until and unless either party petitions for dissolution of the stay based on the final administrative outcome, at which time the trial court shall conduct further proceedings consistent with the views expressed herein." (F029400.)

When respondent petitioned for review, the Supreme Court in 2004 agreed with our conclusion that respondent's bad faith claim was not actionable as a tort. The Supreme Court also held that deferral of respondent's cross-claim pending respondent's assertion of his remedy through administrative processes would be ordered pursuant to the doctrine of primary jurisdiction. (*Jonathan Neil & Associates, Inc. v. Jones, supra,* 33 Cal.4th at p. 942.) The Supreme Court affirmed our judgment and directed that further proceedings should be conducted in accordance with the views expressed in the Supreme Court opinion. (*Ibid.*) We understand from the parties that a hearing before the Department of Insurance was scheduled for April 18, 2006.

With that history of the litigation between the parties, we will now focus on the facts concerning the renewed judgment. On September 28, 2001, while the appeal and cross-appeal were pending in this court, respondent applied for renewal of the judgment "[e]ntered on . . . July 10, 1997"—that is, the judgment on the jury verdict. The application calculated that the renewed judgment was either $19,341,544.43, including interest, without the remittitur or $9,196,913.38 "following accepted remittitur." The clerk of the superior court entered a notice of renewal of judgment, which stated that "[t]his renewal extends the period of enforceability of the judgment until 10 years from the date the application for renewal was filed." The notice of renewal did not purport to establish the amount of the renewed judgment; instead, a copy of the application (showing the two different amounts) was attached to the notice as served on appellants. The notice informed appellants that if they objected "to this renewal, you may make a motion to vacate or modify the renewal with this court."

Cal-Eagle and Neil filed a motion to vacate the renewal of the judgment. The motion was denied.

Cal-Eagle and Neil filed a notice of appeal "from the renewed judgment." At that time, the appeal from the underlying judgment had not been decided by this court.

An issue arose whether renewal of a judgment constitutes an appealable order. We issued an order deferring consideration of that question until we considered the merits of the appeal. Shortly after that order, Cal-Eagle and Neil filed a notice of appeal from the order denying the motion to vacate the renewed judgment. We consolidated the two appeals. We also stayed briefing in the consolidated appeal "pending the issuance of remittitur in *Jonathan Neil & Associates, Inc., et al. v. Fred Jones, et al.,* F029400 or further order of this court." (When referring to the present appeal, "appellants" mean Cal-Eagle and Neil unless otherwise stated.)

After the Supreme Court affirmed our judgment, the clerk of this court issued a remittitur on December 9, 2004. On December 23, 2004, appellants filed a motion for summary reversal of renewed judgment. The court notified the parties it was considering dismissal of the appeal as moot or was willing to consider resolving the appeal without further briefing. The parties objected. On February 23, 2005, this court denied the motion for summary reversal of the renewed judgment and ordered briefs filed within a time stated.

That same day, Cal-Eagle filed a motion to exonerate its surety bond it had filed to stay enforcement of the judgment pending appeal. Over respondent's objection, the court exonerated the bond. Respondent filed a notice of appeal from that order. That appeal (No. F047716) has not been consolidated with this appeal. We contemporaneously decide that appeal by separate opinion.

## Discussion

### A. *Issues Presented.*

Appellants contend the trial court should have vacated the renewal of judgment when asked to do so in 2001. They also contend the renewed judgment was void because the trial court had no jurisdiction over the judgment while appeal from the judgment was pending in this court and that the application for renewal was "fatally ambiguous and self-contradictory" in claiming both the preremittitur and postremittitur amounts. In addition, they contend the renewal of judgment must be reversed because the underlying judgment was reversed and because respondent's counsel acknowledged as much in the lower court prior to reversal of the judgment.

Respondent contends this court has no jurisdiction over the appeal because an appellate court has no jurisdiction over a nonappealable order. He contends the application for renewal was not defective and that the trial court did not err in declining to vacate the renewal. He argues that if the renewal of judgment is ambiguous or the application states an incorrect amount, the proper remedy is remand for correction, not reversal of the renewal. Respondent argues that the appeal is not moot because "the possibility exists" that on remand from the earlier appeal the trial court could "reinstate" the judgment, at least in part. Finally, respondent contends he should be relieved from the effect of his attorney's acknowledgement that reversal of the underlying judgment "automatically" vacates the renewal of judgment since, at that time, the parties assumed the judgment would simply be affirmed or reversed, and not that the matter would be referred to the Department of Insurance under the primary jurisdiction doctrine.

## B. *Appealability.*

■ As noted, this consolidated appeal concerns two related occurrences in the trial court: the entry of the renewal of judgment and the denial of the motion to vacate the renewal of judgment. At oral argument, respondent expressly conceded that the denial of the motion to vacate is appealable as an order after an appealable judgment. He contends, correctly, that renewal of the judgment is not an appealable event. This is so both because, as respondent argues, entry of the renewal of the judgment is purely ministerial (*Fidelity Creditor Service, Inc. v. Browne* (2001) 89 Cal.App.4th 195, 198 [106 Cal.Rptr.2d 854]; see § 683.150, subd. (a)) and because there is no separate entity called the "renewed judgment." There is simply "the judgment," which remains enforceable for an additional period and for which interest is calculated differently after a party renews the judgment, but the rights of the judgment creditor arise from the underlying judgment. If, for example, a judgment creditor "renewed" a judgment that had been previously satisfied, the creditor would not have any additional rights as a result of the renewal.

■ The order denying the motion to vacate the renewal, by contrast, is appealable. That order involves an adjudication of "any ground [asserted by the judgment debtor] that would be a defense to an action on the judgment, including the ground that the amount of the renewed judgment as entered pursuant to this article is incorrect, . . ." (§ 683.170, subd. (a).) Because a renewal can only be sought after entry of "a money judgment or a judgment for possession or sale of property" (§ 683.110, subd. (a)), an order denying a motion to vacate the renewal necessarily is "an order made after a judgment made appealable by paragraph (1)" of section 904.1, subdivision (a), expressly made appealable by section 904.1, subdivision (a)(2).

■ As a result, and contrary to respondent's broad claim that we have "no power to 'reverse' [the] renewed judgment," we have jurisdiction to review the order denying the motion to vacate and, upon a finding of prejudicial error, to reverse that order and vacate the renewal of judgment. (See § 906 [appellate court "may affirm, reverse or modify any . . . order appealed from"]; cf. *Fidelity Creditor Service, Inc. v. Browne, supra,* 89 Cal.App.4th at p. 199.)

## C. *The Merits of the Appeal.*

Before enactment of sections 683.110 through 683.220 in 1982, the statute of limitations on enforcement of a judgment did not begin to run until the judgment was final—that is, until after the time for filing an appeal from the judgment had expired or until resolution of any appeal. (See *Turner v.*

*Donovan* (1942) 52 Cal.App.2d 236, 238–239 [126 P.2d 187]; Recommendation Proposing the Enforcement of Judgments Law (Oct. 1980) 15 Cal. Law Revision Com. Rep. (1980) p. 2028.) As the law then stood, the separate cause of action for enforcement of a judgment did not accrue until the judgment became final. (*Turner v. Donovan, supra,* 52 Cal.App.2d at p. 238.) Phrased somewhat differently, the statute of limitations for enforcement of the judgment was tolled during the period from entry of the judgment to the finality of the judgment. (*Ibid.*)

■ The 1982 legislation provided for a "streamlined" alternative to the filing of a new civil action to enforce an existing judgment. (Recommendation Proposing the Enforcement of Judgments Law, *supra,* 15 Cal. Law Revision Com. Rep. at p. 2030.) In addition, the new law increased the limitations period for enforcement of the original judgment from five years to 10 years. (*Id.* at p. 2029.) The 10-year limitations period, however, was not tolled by an appeal or by a stay of enforcement: "If the judgment is not renewed, it becomes unenforceable at the conclusion of 10 years *from its entry* . . . ." (*Ibid.,* italics added.) Section 683.210 provides that a judgment may be renewed even where enforcement has been stayed. "Renewal during a stay of enforcement does not affect the stay, but merely prevents the termination of the period of enforceability." (Cal. Law Revision Com. com., Deering's Ann. Code Civ. Proc. (1998 ed.) foll. § 683.210, p. 172.)

Appellants contend the trial court loses jurisdiction to renew the judgment while an appeal is pending. They rely primarily on *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180 [25 Cal.Rptr.3d 298, 106 P.3d 958] (*Varian*). That case, however, clearly supports the trial court's exercise of jurisdiction concerning both the renewal of judgment and the motion to vacate the renewal.

First, appellants do not articulate the relationship between section 916, the automatic stay of judgment by perfecting an appeal of most nonmoney judgments, and section 917.1, conditioning the stay of a money judgment on the posting of an adequate undertaking to pay the judgment if it is affirmed on appeal. Section 916, with which *Varian* was concerned, begins with the following limitation: "Except as provided in Sections 917.1 to 917.9, inclusive, and in Section 116.810, the perfecting of an appeal stays proceedings in the trial court . . . ." We assume, although appellants do not argue the point expressly, that after the nonautomatic stay of a money judgment has been obtained by posting an undertaking, the effect of the section 917.1 stay is the same as the effect of an automatic stay under section 916: "[T]he perfecting of an appeal stays proceedings in the trial court upon the judgment . . . appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment . . . , but the trial court may proceed

upon any other matter embraced in the action and not affected by the judgment or order." (§ 916, subd. (a).)

*Varian* tells us that the "purpose of the automatic stay provision of section 916, subdivision (a), 'is to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided. The [automatic stay] prevents the trial court from rendering an appeal futile by altering the appealed judgment or order by conducting other proceedings that may affect it.' " (*Varian, supra,* 35 Cal.4th at p. 189, original brackets.) If the clerk of the trial court were not able to enter a renewal while an appeal was pending, the status quo would be altered because if the appeal were not fully concluded within 10 years "after the date of entry" of the judgment, "the judgment may not be enforced" under section 683.020. Similarly, if the trial court were without jurisdiction to vacate or correct an erroneous renewal pursuant to section 683.170, the record (if not the reality) of the judgment in the trial court would be modified while the appeal was pending.[1]

■ As we have discussed *ante* in the section on appealability, renewal does not create a new judgment or modify the present judgment. Renewal merely extends the enforceability of the judgment. Appellants contend the judgment is modified because the renewed judgment incorporates accrued interest, costs, and attorney fees into the amount of the judgment itself. The accrual of interest and the possibility of an award of costs and fees are, however, inherent in the original judgment; that is, they augment the judgment by operation of law. The accrual of postjudgment interest similarly increases the judgment without creating a new judgment. And, as with ordinary postjudgment interest, the accrual of the additional amount is contingent in nature: if the original judgment is reversed on appeal, the

---

[1] In a letter brief filed after oral argument concerning the provisions of section 683.020, appellants acknowledge that, contrary to the belief they expressed during argument, "that 10-year period [within which one may execute on a money judgment] is not extended by a stay of execution during an appeal from the judgment." Instead, they argue that the statute of limitations under section 337.5 to bring an action on the judgment is tolled during an appeal of the judgment.

However, even if the time within which one may bring an independent action on the judgment does not start to run until the judgment becomes final on appeal, the judgment creditor is deprived of the benefit of the status quo should he not be allowed to utilize the statutory renewal procedure while awaiting the conclusion of the appeal. The judgment renewal procedure is a different mechanism to extend the life of a judgment than that of bringing an independent action on a judgment. (*Fidelity Creditor Service v. Browne, supra,* 89 Cal.App.4th at p. 200.) Entry by the trial court clerk of a renewal is a ministerial act requiring no showing of diligence on the part of the judgment creditor; a further renewal is allowed no sooner than five years after a prior renewal as the interest is compounded on the judgment with each renewal. (8 Witkin Cal. Procedure (4th ed. 1996) Enforcement of Judgment, §§ 28–33, pp. 64–69.) By contrast, a judgment creditor's option to file an independent action to enforce the judgment after finality on appeal lacks many of the obvious advantages of the statutory renewal procedure.

renewed judgment—which has no independent existence—is reversed along with it by operation of law.

Appellants also contend respondent is judicially estopped from disputing that the renewed judgment must be reversed. In the trial court, respondent's counsel represented to the trial court his understanding that if the original "judgment is reversed, the renewed judgment which is dependent on the initial judgment is automatically vacated."

Respondent's disavowal of this concession is based upon his view of this court's action reversing the original judgment in F029400. If respondent's version of our disposition of that appeal were correct, his point in the present appeal might well have merit. His version, however, is not correct.

The dispositional language of the earlier appeal, affirmed by the Supreme Court on petition for review, was: "The judgment is reversed." We stated earlier in the opinion in F029400 that we were not resolving numerous issues raised by the parties because retrial, if any party had viable claims after completion of administrative proceedings before the Department of Insurance, "will have a wholly different texture and many or most of the substantive and procedural issues raised by the parties will not recur on retrial." (F029400.) We did not state or imply that there might be circumstances in which the trial court would be permitted simply to reinstate respondent's judgment against appellant Cal-Eagle.

Respondent contends he should be relieved from his trial court concession quoted *ante* because our resolution of the earlier appeal stated: "After the administrative process has run its course, the trial court will be in a position to determine whether to reinstate the judgment . . . or enter some other order consistent with this opinion and the state of affairs in existence after administrative finality." Reliance on the quoted language is, at best, disingenuous. The quoted language comes from a section of the opinion entitled "The Appeal of the Johnsey Judgment." (F029400.) It will be recalled that Johnsey was the insurance agency through which respondent obtained the insurance policy underlying all of the claims in the underlying case. In concluding that respondent did not owe appellants any additional premiums, the jury concluded Johnsey was not negligent in the representations it made in procuring the policy. Judgment for Johnsey and against respondent was entered on the verdict. As a part of its cross-appeal in F029400, respondent Jones conditionally appealed that judgment, seeking reversal of the judgment and a new trial if we reversed the judgment against Cal-Eagle, thereby restoring a possibility respondent would be found to owe additional premiums on retrial.

In this limited context, we considered the possibility that, after administrative proceedings, it was possible that respondent's view of the billing dispute would prevail, respondent would still owe no additional premiums, and the retrial would be limited to respondent's fraud claim against appellants. In that circumstance, the condition of respondent's appeal of the Johnsey judgment would have, in net effect, failed and the judgment for Johnsey and against respondent would properly be reinstated. If, however, the administrative hearing resulted in a determination that respondent Jones owed additional premiums, the negligence claim against Johnsey would be revived and the judgment for Johnsey would remain remanded for a new trial.

As stated, this possibility was recognized and articulated only in the limited context of the defense verdict for Johnsey. We did not state or imply a possibility the money judgment for respondent could be reinstated. In summary, as to the renewed judgment against Cal-Eagle and in favor of respondent, the result of the appeal was outright reversal, the very circumstance contemplated in counsel's concession in the trial court. Accordingly, there was no unexpected disposition that operated to relieve respondent of counsel's concession.

Appellants contend the trial court should have vacated the renewed judgment because it was wrongly calculated, self-contradictory, and ambiguous. We need not reach these issues. We have held *ante* that respondent was entitled to renew the judgment while the appeal was pending. At most, then, under section 683.170 the trial court would have been required to enter a corrected renewal if it had agreed with appellants' calculations on the motion to vacate (see § 683.170, subd. (c)), but respondent still would have been entitled to a renewed judgment in *some* amount.

Subsequent to the trial court's order denying appellants' motion to vacate the renewed judgment, this court reversed the judgment and the Supreme Court affirmed that disposition of the appeal. Accordingly, and without further action by the trial court, the renewed judgment—because it is, legally, the same judgment that was reversed—ceased to exist. In *Blaylock v. Jensen* (1941) 44 Cal.App.2d 853 [113 P.2d 258], a party appealed from an order taxing costs. A separate appeal from the underlying judgment was decided earlier the same day as this decision, reversing the judgment. The court dismissed the appeal from the costs order as moot. (*Id.*, at p. 854.) The same principle applies here: we cannot remedy any defect in the renewed judgment because that judgment ceased to exist when the original judgment was reversed in F029400.[2]

---

[2] We add one final note. At oral argument, when we suggested that because the renewal judgment is now void by operation of law, the appropriate disposition is to dismiss the appeal as moot, appellants argued that we have no such power; that the only appropriate disposition

## Disposition

Because the renewal of judgment was vacated by operation of law upon issuance of remittitur in the appeal reversing the underlying judgment, we direct the trial court to vacate the renewal of judgment as void. Accordingly, the appeal is dismissed as moot. The parties shall bear their own costs on appeal.

Levy, J., and Cornell, J., concurred.

The petition of all respondents for review by the Supreme Court was denied July 12, 2006, S144276. Baxter, J., did not participate therein.

---

was to reverse. Appellants' asserted authority for this proposition is *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688 [107 Cal.Rptr.2d 149, 23 P.3d 43], previously cited in their briefs. This reliance is misplaced. *Griset* is distinguishable in that there the judgment in question was void from its inception. Here, the renewed judgment became void while this appeal was pending, upon remittitur in the appeal of the underlying judgment. Furthermore, the *Griset* court noted reversal as the only appropriate disposition in light of the appellate court's jurisdictional error in even entertaining the appeal in question because the lawsuit "sought to revive [the] litigation after its final conclusion." (*Id.* at p. 702.) Here, we proceeded with jurisdiction over a judgment not yet void at the time of the filing of this appeal. The subsequent voidness of that judgment renders the appeal moot, akin to the mootness found in *Blaylock v. Jensen, supra*, 44 Cal.App.2d 853.